UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **LARRY WADE SLUSHER**, | 4:16-cv-14029 |
| Petitioner, | |
| v. | HON. TERRENCE G. BERG |
| **THOMAS MACKIE**, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| Respondent. | |

This is a 28 U.S.C. § 2254 habeas action brought by Larry Wade Slusher, a Michigan state prisoner currently serving a sentence of 15 to 25 years. Petitioner challenges his Wayne County Circuit Court conviction for first-degree criminal sexual conduct in violation of Mich. Comp. Law § 750.520b(1)(a). As bases for relief, Petitioner raises the trial court's jury instructions, prosecutorial misconduct, irrelevant witness testimony, ineffective assistance of counsel, and improper judicial factfinding at sentencing. For the reasons discussed below, the Court will deny the habeas petition. The Court will also deny a certificate of appealability.

## BACKGROUND

Petitioner was convicted of one count of first-degree criminal sexual conduct following a jury trial in Wayne County Circuit. The events leading to Petitioner's conviction occurred in 1997 or 1998. *People v. Slusher*, No. 318672, 2015 WL 1446595, at *1 (Mich. Ct. App. Mar. 31,

1

2015). Because of problems at home, RH, the nine-year-old victim, and his mother were staying at Petitioner's home, where Petitioner lived with his wife and children. *Id.* RH came home from school one afternoon to find Petitioner home alone. Petitioner pulled down RH's pants and performed oral sex on RH. *Id.* RH asked Petitioner to stop; Petitioner threatened to kill him if he told anyone what had occurred. *Id.* The abuse ended when a deliveryman came to the front door. *Id.*

RH did not tell anyone about the incident until 1999, when he disclosed to the police that Petitioner had sexually assaulted him. After RH spoke with law enforcement, the district attorney filed criminal charges against Petitioner. *Id.* Petitioner later failed to appear for a final conference scheduled for January 5, 2001, apparently having fled the state. *Id.* He was extradited to Michigan sometime in late 2012 and convicted of first-degree criminal sexual. *Id.*

On direct appeal to the Michigan Court of Appeals, Petitioner took issue with trial testimony stating that he had also sexually abused two other children. *Id.* His ex-wife testified that, in 2000, she had filed a police report concerning an interaction between Petitioner and MS, the couple's son. *Id.* Petitioner's mother corroborated that testimony, confirming that MS had "made allegations" against Petitioner when he was a child. *Id.* Neither Petitioner's ex-wife nor his mother testified to the specific nature of the allegations involving MS. *Id.* The prosecutor also called MS, now an adult, as a witness. *Id.* On the stand, MS denied

any memory of reporting sexual abuse by Petitioner to the police in 2000. *Id.* When asked whether MS had spoken with an investigator in 2012, MS initially denied having done so. *Id.* He later acknowledged he had spoken with the investigator but said he could not recall the substance of their conversation. *Id.* MS specifically denied telling the investigator that Petitioner had sexually abused him as a child, or that Petitioner had sexually abused another boy who was MS's childhood friend and neighbor. When asked about visiting a doctor a few months before Petitioner's trial, MS confirmed the visit, stating that with the help of this doctor he had "fixed all [of his] memories [him]self." *Id.* Petitioner's mother testified that she had taken MS "to a doctor so he could talk to him and settle it in his own mind what the truth was." *Id.*

The state appellate court denied Petitioner relief on all issues raised: (1) improper admission of "other acts" testimony; (2) jury instruction error; (3) prosecutorial misconduct; (4) irrelevant witness testimony; and (5) judicial fact-finding at sentencing in violation of *Alleyne v. United States*, 570 U.S. 99 (2013). The Michigan Supreme Court denied leave to appeal because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Slusher*, 499 Mich. 869 (2016). Slusher timely filed this § 2254 petition on November 14, 2016.

## LEGAL STANDARD

Section 2254(d) of Title 28 of the United States Code, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, places strict limits on federal courts' authority to grant applications for a writ of habeas corpus by state prisoners. *Moore v. Mitchell*, 708 F.3d 760, 781 (6th Cir. 2013). Section 2254(d) instructs that federal courts "shall not" grant a habeas petition filed by a state prisoner with respect to any claim adjudicated on the merits by a state court, absent applicability of either of two specific exceptions. The first exception occurs if the state-court judgment "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "[A]n 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). The second exception applies if the state court judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Additionally, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). Habeas review is thus "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). A habeas petitioner may

rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998).

## DISCUSSION

Petitioner claims he was denied a fair trial due to jury-instruction error, prosecutorial misconduct, and irrelevant witness testimony; that he received ineffective assistance of counsel when trial counsel failed to object to those errors; and that his sentence was informed by impermissible judicial factfinding. The government asserts that Petitioner waived several of these claims, or that they are procedurally defaulted. Because a habeas petitioner who seeks to obtain relief on procedurally defaulted claims must establish, among other things, that the claims are meritorious, the Court will cut to the merits analysis. *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010). *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.").

On the merits, the government contends that Petitioner's rights were adequately protected by the jury instructions, that the prosecutor's remarks were not misconduct or error, and that Petitioner's challenge to witness testimony raises only questions of state law. Respondent also asserts that counsel was not ineffective for failing to raise futile objections and that *Alleyne*'s holding on judicial factfinding does not apply to the advisory sentencing system applied in Petitioner's case.

### A. Erroneous jury instructions

Petitioner argues, first, that the trial court erred by instructing the jury that it "ha[d] heard evidence" of other acts he might have committed because no substantive evidence was offered on that issue. The Michigan Court of Appeals agreed this instruction was incorrect. *Slusher*, 2015 WL 1446595, at *3. The appellate court acknowledged, at least three times, that no such evidence was offered. *See id.* at *2 ("no evidence of other acts of sexual misconduct was ever admitted."), *3, *5. Nonetheless, the court held that "the instructions as a whole adequately protected defendant's rights" because the trial court also instructed the jury "not to convict defendant 'because you think he is guilty of other bad conduct[.]'" *Id.*

In general, a jury instruction that is incorrect under state law cannot serve as a basis for federal habeas relief. *Ambrose v. Romanowski*, 621 F. App'x 808, 813 (6th Cir. 2015) (citing *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991) and *Byrd v. Collins*, 209 F.3d 486, 527 (6th Cir. 2000)). Rather, the question on habeas review is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Ambrose*, 621 F. App'x at 813. (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973) and *Estelle*, 502 U.S. at 72). This requires a federal court on habeas review to consider an erroneous jury instruction in the context of the other instructions and the trial record as a whole. *Cupp*, 414 U.S. at 147.

Here, despite the appellate court's determination that no other-acts evidence was introduced, and that the jury instructions as a whole protected Petitioner's rights, the court acknowledged that the prosecutor's examination of MS likely influenced the jury:

> While the jury was not presented with evidence of other acts of sexual abuse, it did hear MS deny reporting a number of specific descriptions of sexual abuse. MS also testified that his memory had been "fixed" with the help of a doctor. From this testimony, a juror could have easily felt that MS's testimony was not credible, and believed that defendant had molested MS or his friend, despite the absence of any actual evidence of this abuse.

*Slusher*, 2015 WL 1446595, at *3.

Under AEDPA's highly deferential standard, however, "fairminded jurists could not disagree" as to whether the trial court's instructions adequately protected Petitioner's rights. *Harrington*, 562 U.S. at 101. The trial court instructed the jury not to convict Petitioner on the basis of other bad conduct. *Slusher*, 2015 WL 1446595, at *4. That was immediately followed by an instruction that the jury must convict only if it found beyond a reasonable doubt that Petitioner had committed the crime with which he had been charged. ECF No. 5-16, PageID.979. (Aug. 15, 2013 Trial Tr.). The court also instructed the jury that "it's not necessary that there be any evidence other than the testimony of [complainant RH] if you believe that testimony proves guilt beyond a reasonable doubt." *Id.* at PageID.978. Viewing the trial record and the

jury instructions as a whole, the trial court's erroneous reference to evidence of other bad acts did not so infect the trial that it violated due process. Petitioner is not entitled to relief on this issue.

### B.   Prosecutorial misconduct

Petitioner next takes issue with several statements made by the prosecutor during opening and closing arguments. First, he challenges the prosecutor's reference to his flight from Michigan in her opening and closing arguments, which he says invoked his potentially lengthy sentence and unconstitutionally shifted the evidentiary burden to him to establish valid reasons for his absence from the state. Second, Petitioner contends the prosecutor's comments that "no evidence" other than consciousness of guilt explained his flight undermined his Fifth Amendment right not to testify. Finally, Petitioner claims that the prosecution's examination of MS, Petitioner's son, concerning any "other acts" of child abuse by Petitioner, despite knowing that MS would deny knowledge of any such incident, deprived Petitioner of a fundamentally fair trial and due process.

The Michigan Court of Appeals denied relief on these grounds because Petitioner failed to contemporaneously object or to request a curative jury instruction. *Slusher*, 2015 WL 1446595, at *5–7. The appellate court determined that the prosecutor had not in fact invoked Petitioner's potential sentence, and that her argument was otherwise proper. *Id*. at *6–7. On the issue of MS's testimony, the court held that

8

"the prosecutor's good-faith effort to admit the evidence [of other acts of sexual abuse] cannot form the basis of a claim of prosecutorial misconduct." *Id*. at *6 (citing *People v. Noble*, 238 Mich. App. 647, 660 (1999)).

The appellate court did not act unreasonably in denying Petitioner relief based on the prosecutor's reference to his absence from the state during opening and closing statements. Clearly established federal law provides that, to form a constitutional violation, a prosecutor's comments—far more than being improper—must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). The "touchstone" of the due process inquiry is thus "the fairness of the trial, not the culpability of the prosecutor." *Moore v. Mitchell*, 708 F.3d 760, 799 (6th Cir. 2013) (citations omitted). Even where a prosecutor's statements were so extreme as to be "universally condemned," the relevant inquiry remains whether due process was denied. *Darden*, 477 U.S. at 181. For example, in *Darden* the Supreme Court found that a petitioner was not deprived of a fair trial where "[t]he prosecutors' argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent." *Id*. at 181–82 (citation omitted).

Petitioner first objects to the prosecutor's statement that "[h]e bought himself 15 years and he wasn't entitled to it. And now we're asking you to make that right." ECF No. 5-13, PageID.539. According to Petitioner, this reference to his 15-year absence from the state invoked his 10 to 25-year sentencing guidelines range and violated his due process rights by inviting the jury to convict in order to remedy his previous avoidance of prison. Consistent with the court of appeals' assessment, this Court finds that "[n]one of these comments [by the prosecutor] asked the jury to consider defendant's punishment." *Slusher*, 2015 WL 1446595, at *6. Rather, the prosecutor was alluding to the fact that defendant had fled Michigan for more than a decade and thereby avoided going to trial. *Id.* Such comments do not rise to the level of a constitutional violation.

Next, Petitioner objects to the prosecutor's statements at closing that "no evidence on the record" existed to explain Petitioner's flight other than his consciousness of guilt. These comments fall short of violating Petitioner's Fifth Amendment right not to testify. Although a prosecutor's direct comments on a defendant's failure to testify violate the defendant's Fifth Amendment rights against self-incrimination, when such comments are indirect the reviewing court must examine "all the surrounding circumstances" to assess whether a constitutional violation occurred. *Moore*, 708 F.3d at 799 (citing *Griffin v. California*, 380 U.S. 609, 613–14 (1965)); *Byrd*, 209 F.3d at 533 (citing *Butler v. Rose*,

10

686 F.2d 1163, 1170 (6th Cir. 1982) (en banc)). This review must take four factors into account: (1) Did the prosecutor "manifestly intend[ ]" to comment on the defendant's Fifth Amendment right, or would a jury "naturally and necessarily" interpret the remark that way; (2) was it an isolated occurrence or part of an extensive pattern; (3) how strong was the prosecution's other evidence and (4) did the judge give a curative instruction? *Webb v. Mitchell*, 586 F.3d 383, 396 (6th Cir. 2009) (citing *Bowling v. Parker*, 344 F.3d 487, 514 (6th Cir. 2003)).

Here, a full review of the relevant context indicates there was no violation of Petitioner's Fifth Amendment rights. First, it does not appear that the prosecutor, in referring to Petitioner's almost 15-year absence from the state, manifestly intended to address his decision not to testify. Rather, she referred only to the absence of evidence in the trial (other than consciousness of guilt) that could have provided a reason for Petitioner's flight. Certainly, evidence other than Petitioner's testimony could have been introduced to show whether there were any alternative reasons for his flight. There is no reason to believe that the jury would necessarily have taken the prosecutor's vague reference to "no evidence on the record" as specifically referring to Petitioner's decision not to testify. Second, the remarks were isolated and made in part to respond to defense counsel's suggestion during closing that Petitioner fled because he panicked. ECF No. 5-16, PageID.953, 966. (Indeed, if the prosecutor was responding to the defense argument that the reason for

Petitioner's flight was "panic," it would have been fair to dispute that by pointing out that "no evidence" supported a reason for flight other than consciousness of guilt.) Third, the other evidence against Petitioner, though not overwhelming, was strong. Finally, although the judge did not specifically provide any curative instruction to the jury, this is explained by that fact that the defense did not contemporaneously object to the prosecutor's statements. Besides, the trial court nonetheless instructed the jury that Petitioner possessed an "absolute right not to testify" and that his failure to do so must not affect its deliberations or verdict. ECF No. 5-16, PageID.972. Viewed against these four factors, the state court's finding that the prosecutor did not violate Petitioner's Fifth Amendment right not to testify was not unreasonable.

Petitioner's final prosecutorial-misconduct claim is that he was denied a fair trial due to conduct of the prosecutor during the direct examination of Petitioner's son, MS. The prosecutor's questioning, Petitioner contends, placed otherwise inadmissible evidence of "other acts" before the jury. Petitioner also takes issue with the prosecutor's argument at closing about related facts not in evidence. Having carefully reviewed this claim, this Court agrees that the prosecutor's conduct was improper. Nonetheless, there was sufficient evidence in the record to support MS's conviction even without the prosecutor's improper examination of MS. AEDPA's extremely high bar thus prevents this

12

Court from granting Petitioner habeas relief on the basis of the prosecutor's actions.

As an initial matter, the state appellate court's factual finding that defense counsel failed to object to MS's testimony and to request a curative instruction was an unreasonable determination of the facts. Defense counsel in fact expressly moved to exclude MS's testimony, arguing that the prosecutor was only placing him on the stand to "create something in the minds of the jury that isn't admissible." ECF No. 5-13, PageID.337. Defense counsel also objected multiple times during MS's testimony. *See* ECF No. 5-15, PageID.872, 877, 880. Finally, counsel requested an instruction that MS's testimony was not evidence of bad acts and must not be considered by the jury in deliberations. ECF No. 5-16, PageID.918.

In support of allowing MS's testimony, the prosecutor argued that after Petitioner was extradited to Michigan, MS had accused him of perpetrating similar abuse against him and another child, BR. ECF No. 5-13, at PageID.342. But MS later told the prosecutor's investigator that his father had in fact never done those things. *Id*. The prosecutor argued that MS had retracted his original accusations because of interference by Petitioner and Petitioner's mother. *See*, *e.g.*, *id*. at PageID.352.

Despite acknowledging that MS had changed his testimony, the prosecutor told the trial court that she did not know what he would say on the stand. *Id*. at PageID.342, 350–51. The prosecutor also told the

court that she had provided defense counsel with MS's statements to her investigator and to the Taylor, Michigan police department, which she presented as a basis for her other acts evidence against Petitioner. *Id.* at PageID.344, 347. Defense counsel urged the trial court to take MS's testimony *in camera*, to make a proper determination as to its admissibility. ECF No. 5-13, PageID.346. But the court declined to do so and ruled MS's testimony admissible. *Id.* at PageID.356.

On the stand, MS said he did not remember talking to the Taylor police or an investigator from the prosecutor's office. ECF No. 5-15, PageID.871, 876.[1] Yet the prosecutor continued to question MS at length about what he had said during those purported conversations. She asked MS whether he remembered telling police that his father took him out of bed, pulled his pants down, inserted his finger in MS's "butt," which hurt him; and punched him in the groin. ECF No. 5-15, PageID.871–74. She asked the same sequence of questions about an alleged similar, second incident. *Id.* at PageID.875. MS consistently answered "No" to every question. The prosecutor also asked MS questions about his friend, BR. *Id.* at PageID.877. MS remembered BR as his childhood best friend. *Id.* But he denied telling the prosecutor's investigator that he witnessed his father molest BR. *Id.* at PageID.878.

---

[1] The relevant portion of MS's testimony is attached as an Appendix to this opinion. The testimony has been redacted to exclude MS's and BR's names.

By asking MS this series of leading questions in the face of his repeated denial of any relevant knowledge or recollection, the prosecutor *alone* supplied the jury with a detailed picture of two other alleged acts of child molestation by Petitioner.[2] MS failed to adopt a single one of the prosecutor's questions about Petitioner's actions. Yet his consistent denial of any relevant recollection did not deter the prosecutor from continuing to use her questions to provide all the sordid details. Then, during closing, the prosecutor raised MS's "testimony" to the jury. ECF No. 5-16, PageID.941. She stated that, before Petitioner returned to Michigan, MS told her investigator about "another little boy." *Id*. at 941–42. This is despite the fact that, while on the stand, MS had consistently responded "No" to the prosecutor's questions about whether he told the investigator about "another little boy." ECF No. 5-15, PageID.876-78.

"[T]he tremendous power a prosecutor may wield is accompanied by a special responsibility to exercise that power fairly[.]" *Hodge v. Hurley*, 426 F.3d 368, 376 (6th Cir. 2005) (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)). Although a prosecutor may pursue a case with vigor and earnestness, her goal must always be that "justice shall be done," not that she "shall win a case." *Id*. at 376–77 (quoting *Berger*, 295 U.S. at 88). As

---

[2] MS's mother (Petitioner's ex-wife) testified that she had made a police report in Taylor about Petitioner but did not stop MS's visitation with Petitioner. ECF No. 5-15, PageID.850–51. Petitioner's mother also testified that she was aware MS had made "allegations" against Petitioner when he was a little boy. *Id*. at PageID.894. Neither provided information on the nature of those complaints.

15

such, prosecutors have a duty to refrain from using improper methods intended to produce a wrongful conviction. *Id.*

As discussed above, the standard for analyzing prosecutorial misconduct is whether the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker*, 567 U.S. at 45 (quoting *Darden*, 477 U.S. at 181). As *Parker* notes, "the *Darden* standard is a very general one, leaving courts significant leeway to make "case-by-case determinations". *Id.* at 48 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Sixth Circuit has interpreted *Parker*'s holding to require that, to establish prosecutorial misconduct, a petitioner must cite Supreme Court precedent—in addition to *Darden*—demonstrating that the state court's determination in a particular factual context was "unreasonable." *Majid v. Noble*, 751 F. App'x 735, 743–44 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1360 (2019) (citation omitted).

Unfortunately for Petitioner, although the prosecutor's examination of MS would be prohibited as impermissible "subterfuge" under unanimous federal circuit court of appeals precedent, even such well accepted law does not stand as "clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). As such, it cannot form a basis for habeas relief under AEDPA. *Parker*, 567 U.S. at 48–49 (citing *Renico*, 130 S. Ct., at 1865–1866; 28 U.S.C. § 2254(d)(1)). Indeed, the Supreme Court, in *Marshall v. Rodgers*, 569 U.S. 58, 64

16

(2013) specifically admonished that federal courts of appeal "may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to this Court, be accepted as correct." (citing *Parker*, 132 S. Ct. at 2155–2156; *Renico*, 559 U.S. 766, 778–779) (other citations omitted).

This Court nonetheless observes it is "widely accepted" that "a criminal prosecutor may not employ a prior inconsistent statement to impeach a witness on a 'mere subterfuge' or for the 'primary purpose' of placing before the jury substantive evidence which is otherwise inadmissible." *Evans v. Verdini*, 466 F.3d 141, 146 (1st Cir. 2006) (citing 1 Broun et al., McCormick on Evidence § 38, at 168 (6th ed. 2006)). The circuit courts have expressed unanimous agreement that this type of conduct should be prohibited.[3] *See, e.g., United States v. Patterson*, 23 F.3d 1239, 1245 (7th Cir. 1994) ("[T]he prosecution may not 'call a witness that it [knows will] not give it useful evidence, just so it [can] introduce hearsay evidence against the defendant in the hope that the jury [will]

---

[3] *See United States v. Veal*, 182 F.3d 902 (2d Cir. 1999); *United States v. Sebetich*, 776 F.2d 412, 429 (3d Cir. 1985); *United States v. Morlang*, 531 F.2d 183, 189 (4th Cir. 1975); *United States v. Hogan*, 763 F.2d 697, 701–03 (5th Cir. 1985); *Apanovitch v. Houk*, 466 F.3d 460, 485 (6th Cir. 2006); *United States v. Davis*, 845 F.3d 282, 289 (7th Cir. 2016); *United States v. Buffalo*, 358 F.3d 519, 522–23 (8th Cir. 2004); *United States v. Crouch*, 731 F.2d 621, 624 (9th Cir. 1984), *cert. denied*, 469 U.S. 1105 (1985); *United States v. Peterman*, 841 F.2d 1474, 1479 n. 3 (10th Cir. 1988); *Balogh's of Coral Gables, Inc. v. Getz*, 778 F.2d 649, 653 (11th Cir. 1985), *reh'g granted and opinion vacated*, 785 F.2d 895 (11th Cir. 1986), *and on reh'g*, 798 F.2d 1356 (11th Cir. 1986); *United States v. Johnson*, 802 F.2d 1459, 1466 (D.C. Cir. 1986).

17

miss the subtle distinction between impeachment and substantive evidence.'") (alterations in original).

Like the other federal courts of appeal, the Sixth Circuit has held that "[t]he prosecution may not employ impeachment by prior inconsistent statement 'as a mere subterfuge to get before the jury evidence not otherwise admissible.'" *Apanovitch v. Houk*, 466 F.3d 460, 485 (6th Cir. 2006) (quoting *United States v. Buffalo*, 358 F.3d 519, 522 –23 (8th Cir. 2004)). Nonetheless, Sixth Circuit precedent indicates that even a prosecutor's recitation of "the entire substance of a witness's disavowed, unsworn prior statements" does not violate a defendant's Fifth Amendment due process rights unless the prosecutor's statement would be "sufficient to sustain a conviction" if credited by the jury. *See United States v. Shoupe*, 548 F.2d 636, 643 (6th Cir. 1977). In contrast, the appellate court has suggested that improper admission of such evidence "constitutes only nonconstitutional error" where the prior, improperly admitted statements could not alone serve as a basis to sustain the defendant's conviction. *Apanovitch*, 466 F.3d at 485–86 (citing *United States v. Zackson*, 12 F.3d 1178, 1184 (6th Cir. 1993)).

Even considering all of the above case law, in analyzing a habeas petition by a state prisoner, the question before this Court is not whether the prosecutor's misconduct *was* a due process violation, but rather whether the state court's determination *that it was not* constitutes an unreasonable application of "clearly established" Supreme Court

18

precedent, or is in conflict with such precedent. 28 U.S.C. § 2254(d). *See Knowles*, 556 U.S. at 122. Regarding pertinent "clearly established law," the Sixth Circuit has concluded that there is at this time no "Supreme Court authority" that supports finding a due process violation when a prosecutor's actions lead to the admission of inadmissible evidence. *Wade v. White*, 120 F. App'x 591, 594 (6th Cir. 2005). *See Simmons v. Woods*, No. 16-2546, 2018 WL 618476, at *3 (6th Cir. Jan. 30, 2018) (applying *Darden*'s "so infected the trial with unfairness" test and holding that "[a]sking questions that call for answers that may be deemed inadmissible on relevancy grounds does not amount to prosecutorial misconduct that rises to the level of a due-process violation") (citing *Wade*, 120 F. App'x at 594)).

The primary purpose of the prosecutor's questions to MS was to place before the jury vivid scenarios of additional acts of child molestation by Petitioner. Although the trial court provided curative jury instructions, it is impossible to "unring the bell" after a jury hears highly prejudicial testimony, such as the accusation of multiple acts of child molestation. *See United States v. Labbous*, 82 F.3d 419 (6th Cir. 1996) (Table) (holding that characterization of defendant "a drug user or dealer carries with it an abhorrent connotation" and a curative instruction may only highlight the testimony) (citation omitted). Indeed, the Michigan Court of Appeals in this case itself acknowledged that the jury might "believe[ ] that defendant had molested MS or his friend, *despite the*

19

*absence of any actual evidence* of this abuse." *Slusher*, 2015 WL 1446595, at *3 (emphasis added). The prejudice caused by the prosecutor's direct examination of MS was compounded by her argument in closing that Petitioner molested MS and another child. ECF No. 5-16, PageID.941–42. Arguing facts not in evidence is improper. *Byrd*, 209 F.3d at 535 (citing *United States v. Wiedyk*, 71 F.3d 602, 610 (6th Cir. 1995)). But at the same time, as discussed in Petitioner's first claim, the jury was instructed not to convict Petitioner on the basis of other bad conduct. *Slusher*, 2015 WL 1446595, at *4. It was also instructed that the prosecutor's questions were not evidence. "A jury is presumed to follow its instructions." *United States v. Johnson*, 803 F.3d 279, 282 (6th Cir. 2015) (citing *Blueford v. Arkansas*, 599 U.S. 566, 606 (2012)).

The use of subterfuge such as was engaged in by the prosecutor in this case is prohibited by all federal courts of appeal. Nonetheless, sufficient evidence was admitted to convict Petitioner independent of the prosecutor's improper questions to MS, indicating that the prosecutor's statements may not have been constitutional error under Sixth Circuit precedent. Most importantly, there is no clearly established Supreme Court precedent providing that the use of such subterfuge is reversible error. For all the reasons stated above, Petitioner is not entitled to habeas relief on his claims of prosecutorial misconduct.

### C.    Irrelevant witness testimony

Petitioner next argues he was denied a fair trial by the introduction of irrelevant evidence against him, through the testimony of the ex-fiancée of complaining witness RH. The state court of appeals found no error because the witness's testimony about "RH's emotions regarding what happened with [Petitioner]" was relevant to the complainant's credibility, especially as RH provided "the only evidence detailing the sexual assault committed by [Petitioner]." *Slusher*, 2015 WL 1446595, at *8. It also rejected Petitioner's argument that the testimony's prejudicial effect outweighed its probative value, noting that "[t]he testimony concerned RH's emotions, but was not itself of such a nature as would elicit a strong emotional response from the jury." *Id*. at *9.

These findings by the state court were not unreasonable. The standard for granting habeas relief on the basis of state-court evidentiary rulings is "not easily met." *Wilson v. Sheldon*, 874 F.3d 470, 475 (6th Cir. 2017). If an evidentiary ruling is "especially egregious and 'results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief.'" *Wilson*, 874 F.3d at 475 (quoting *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)). *See also Estelle*, 502 U.S. at 68. But the state court retains "wide latitude with regard to evidentiary matters under the Due Process Clause." *Wilson*, 874 F.3d at 475 (citing *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)). Finally, in the absence of false evidence or evidence that otherwise violates a "specific

constitutional prohibition," a prosecutor's elicitation of irrelevant testimony does not rise to the level of a due process violation. *Wade*, 120 F. App'x at 594. Petitioner is not entitled to habeas relief on this issue.

### D.   Ineffective assistance of trial counsel

Claims for habeas relief based on ineffective assistance of counsel are evaluated under a "doubly deferential" standard. *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013)). The first layer is the familiar deficient performance plus prejudice standard of *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). That is, a habeas petitioner must first show that counsel's representation fell short of "an objective standard of reasonableness," and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citations omitted). A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Williams v. Lafler*, 494 F. App'x 526, 532 (6th Cir. 2012) (per curiam) (quoting *Strickland*, 466 U.S. at 694)). *Strickland* requires a "strong presumption" that counsel's performance fell within the generous range of "reasonable professional assistance." *Abby*, 742 F.3d at 226 (citing *Strickland*, 466 U.S. at 689). Further, *Strickland* mandates a presumption that the challenged action by counsel "might be considered sound trial strategy" under the circumstances. *Bell*, 535 U.S. at 698 (citing *Strickland*, 466 U.S. at 689). Finally, attorneys cannot be found

22

ineffective for choosing not to take futile actions or for not "rais[ing] . . . meritless arguments." *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999).

AEDPA provides the second layer of deference to decisions by counsel by permitting this Court to "examine only whether the state court was reasonable in its determination that counsel's performance was adequate." *Abby*, 742 F.3d at 226 (citing *Burt*, 134 S. Ct. at 18). The question before this Court is thus whether the state court's application of the *Strickland* standard was unreasonable. *Harrington*, 562 U.S. at 101. This inquiry is distinct from asking whether defense counsel's performance fell below the *Strickland* standard. *Id.*

Petitioner contends he received ineffective assistance of counsel because of his attorney's failure to object to the trial court's jury instructions, and to the prosecutor's comments during opening and closing statements. As explained above, the trial court's jury instructions were not in error, and the prosecutor's statements regarding his flight from the jurisdiction and 15-year absence do not rise to the level of prosecutorial misconduct. Besides, the record shows that, rather than failing to object, defense counsel advocated for the jury instructions Petitioner sought and renewed his objection to the instructions as given at their conclusion. ECF No. 5-16, PageID.918–19, 983. Counsel's representation was not deficient.

Petitioner is also unable to demonstrate prejudice. To do so, Petitioner must show "a reasonable probability" of a different outcome,

absent counsel's errors. *Lafler*, 566 U.S. at 163. This requires a "substantial" likelihood, not just a "conceivable" one. *Harrington*, 562 U.S. at 112 (citing *Strickland*, at 693). In view of RH's and other witness testimony, Petitioner cannot demonstrate prejudice resulting from defense counsel's failure to object to the prosecutor's alleged allusion to Petitioner's sentence or her passing comment that Petitioner had failed to explain his multi-year absence from the state. The state court's rejection of Petitioner's claims of ineffective assistance of counsel was not unreasonable.

### E.   Judicial factfinding at sentencing

Finally, Petitioner argues that the trial court's scoring of two offense variables via judicial factfinding was constitutional error under *Alleyne v. United States*, 570 US 99 (2013) because it increased his minimum permissible sentence. The Michigan Court of Appeals denied relief on this claim because Petitioner was sentenced under an advisory system. That is, Petitioner's conviction was for an offense that occurred in 1997 or 1998, so he was sentenced under the judicially crafted guidelines system then in effect, which was not binding on the trial court. *Slusher*, 2015 WL 1446595, at *9 (citing *People v. Hegwood*, 465 Mich. 432, 438 (2001); *People v. Potts*, 436 Mich. 295, 302–303 (1990)). Because the sentencing scheme did not establish a mandatory minimum sentence, the state court reasoned, *Alleyne*'s prohibition against judicial factfinding

does not apply. *Id.* (citing *People v. Herron*, 303 Mich. App. 392, 401–404 (2013)).

The state court was not unreasonable to find that Petitioner's sentence did not violate *Alleyne* in view of the discretionary scheme under which he was sentenced. Further, *Alleyne*, decided only two months before Petitioner was sentenced, was not "clearly established law" mandating habeas relief. Initial Sixth Circuit decisions applying *Alleyne* found that guidelines-type sentencing schemes did not offend the Sixth Amendment. *See*, *e.g.*, *Saccoccia v. Farley*, 573 F. App'x 483, 485 (6th Cir. 2014). The Sixth Circuit later changed its position and held that Michigan's mandatory, statutory sentencing guidelines scheme "violated *Alleyne's* prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Robinson v. Woods*, 901 F.3d 710, 716–17 (6th Cir. 2018), *cert. denied sub nom. Huss v. Robinson*, 139 S. Ct. 1264 (2019) (citing *Alleyne*, 570 U.S. at 111-12). The Sixth Circuit's evolving perception of *Alleyne* demonstrates that "fair-minded jurists" could and did disagree, *Harrington*, 562 U.S. at 101, and therefore its prohibition on judge-found facts in sentencing was not "clearly established" at the time of Petitioner's sentencing. *See Haller v. Campbell*, No. 1:16-CV-206, 2016 WL 1068744, at *6 (W.D. Mich. Mar. 18, 2016).

In addition, a sentence whose length is within statutory limits is generally not subject to appellate or habeas review. *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004) (citation omitted); *Cook v. Stegall*,

56 F. Supp.2d 788, 797 (E.D. Mich. 1999). Such a sentence "will not [be] set aside, on allegations of unfairness or an abuse of discretion . . . unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking." *Doyle*, 347 F. Supp. 2d at 485. In fact, "federal habeas review of a state court sentence ends once the court makes a determination that the sentence is within the limitation set by statute." *Id.* (citing *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000); *Allen v. Stovall*, 156 F. Supp. 2d 791, 795 (E.D. Mich. 2001)).

Petitioner argues that if offense variables 7 and 13 were scored at zero, eliminating the *Alleyne* violation, the calculated sentencing guideline range for his minimum sentence would be 72 months to 180 months. ECF No. 1, PageID.58 (Pet.). The trial court imposed a minimum sentence of 15 years (or 180 months). This term is at the top but arguably "within state statutory limits" and is thus neither "disproportionate [nor] . . . completely arbitrary and shocking." *Doyle*, 347 F. Supp.2d at 485. Petitioner is not entitled to relief on his sentencing claim.

### F.   Certificate of appealability

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed

further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id*. at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254. *See also Strayhorn v. Booker*, 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010). The Court will deny Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Dell v. Straub*, 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).

## CONCLUSION

For these reasons, the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**. If is **FURTHER ORDERED** that a certificate of appealability is **DENIED.**

**SO ORDERED**.

Dated: May 11, 2020                         s/Terrence G. Berg
                                            TERRENCE G. BERG
                                            UNITED STATES DISTRICT JUDGE